UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
THE CITY OF NEW YORK,

    Plaintiff,

-against-

GOLDEN FEATHER SMOKE SHOP, INC., KIMO
SMOKE SHOP, INC., SMOKE AND ROLLS INC.,
SHAWN MORRISON, KIANA MORRISON, in her
individual capacity, MONIQUE'S SMOKE SHOP,
ERNESTINE WATKINS, in her individual capacity,
JESSEY WATKINS, WAYNE HARRIS, PEACE PIPE
SMOKE SHOP, RODNEY MORRISON, Sr.,
CHARLOTTE MORRISON, in her individual capacity,
RED DOT & FEATHERS SMOKE SHOP, INC.,
RAYMOND HART, in his individual capacity,
SMOKING ARROW SMOKE SHOP, DENISE
PASCHALL, in her individual capacity, TONY D.
PHILLIPS, TDM DISCOUNT CIGARETTES, and
THOMASINA MACK, in her individual capacity,

    Defendants.
------------------------------------------------------------------x

NOT FOR PRINT OR
ELECTRONIC PUBLICATION

**MEMORANDUM & ORDER**
08-CV-3966 (CBA)

AMON, Chief United States District Judge:

  Currently before the Court is the City's motion, pursuant to Rule 55(b) of the Federal Rules of Civil Procedure, for a default judgment against defendant Tony Phillips. For the reasons stated below, the motion is granted on the issue of Phillips' direct liability under the CCTA and the CMSA. The City shall submit its briefing on the appropriate monetary relief as against Phillips together with its motion for summary judgment against the other defendants in this action.

 **I.**  **BACKGROUND**

  The City of New York brought this action against the above-captioned defendants, seeking injunctive relief, penalties and damages under the Contraband Cigarette Trafficking Act,

1

18 U.S.C. § 2341 et seq. (the "CCTA"), and the Cigarette Marketing Standards Act, N.Y. Tax L. § 483 et seq. (the "CMSA"). Defendants are individuals and businesses engaged (or formerly engaged) in the sale of cigarettes from the Poospatuck Indian Reservation in Mastic, New York. According to the City, the defendants purchased large quantities of cigarettes on which State and City taxes had not been paid and sold them in bulk to bootleggers, who transported the cigarettes off the reservation and sold them in the City and elsewhere.

Under the version of the New York Tax Law that was in effect at the time this action and the instant motion for default were filed, N.Y. Tax L. § 471 provided, in pertinent part: "There is hereby imposed and shall be paid a tax on all cigarettes possessed in the state by any person for sale, except that no tax shall be imposed on cigarettes sold under such circumstances that this state is without power to impose such tax . . . ." Dep't of Taxation & Fin. of N.Y. v. Milhelm Attea & Bros., Inc., 512 U.S. 61, 64 (1994). No specific exception was made in the statute at that time for sales of cigarettes by or to Native Americans or by retailers on Indian reservations.[1]

Under New York law, cigarette taxes are normally pre-paid by State-licensed "stamping agents," usually wholesale cigarette dealers, who purchase tax stamps from the State and affix them to cigarette packages as evidence of payment. The tax burden is built into the cost of the cigarettes and passed along the distribution chain to each subsequent purchaser, ultimately

---

[1] On June 21, 2010, the New York State Legislature enacted Senate Bill 8285/Assembly Bill 11515, which amended N.Y. Tax Law §§ 471 and 471-e (the "Tax Law Amendments"), and was meant to go into effect on September 1, 2010. The amended version of § 471 clarifies that "sales to qualified Indians for their own use and consumption on their nations' or tribes' qualified reservation" are tax exempt, but that "the tax imposed by this section is imposed on all cigarettes sold on an Indian reservation to non-members of the Indian nation or tribe and to non-Indians and evidence of such tax shall be by means of an affixed cigarette tax stamp." The Tax Law Amendments create both a "coupon" system and a "prior approval" system by which tribes and reservation retailers may obtain tax-exempt cigarettes for purchase and use by tribe members. Cases were filed in both state and federal courts to enjoin implementation and enforcement of the Tax Law Amendments; however by late-June 2011, these efforts had all been rejected in the courts, and the Tax Law Amendments were in effect. (See generally Order Denying Motions to Vacate or Modify the Preliminary Injunction, docket entry #353, at 5-9.) To the Court's knowledge, the City is currently seeking monetary relief for actions taken by the defendants under the former version of § 471, and that former version is all that is relevant to the issue of Phillips' default liability. Thus, when this Order refers to "§ 471," it generally refers to the former version of the statute, prior to the Tax Law Amendments.

falling on the consumer. See N.Y. Tax L. § 471(2); New York Assoc. of Convenience Stores v. Urbach, 92 N.Y.2d 204, 209 (1988). The purpose of this system is to prevent the widespread evasion of New York cigarette taxes. See Milhelm Attea & Bros., 512 U.S. at 75.

Federal and state governments lack authority to tax cigarettes sold to members of Native American tribes for their own consumption. Thus, cigarettes to be consumed on the reservation by enrolled tribal members are tax-exempt and need not bear stamps. Milhelm Attea & Bros., 512 U.S. at 64 (citing Moe v. Confederated Salish & Kootenai Tribes of Flathead Reservation, 425 U.S. 463, 475–81 (1976)). "On-reservation cigarette sales to persons other than reservation Indians, however, are legitimately subject to state taxation." Id. (citing Washington v. Confederated Tribes of Colville Reservation, 447 U.S. 134, 160–61 (1980)). In recognition of these principles, this Court held that cigarettes sold to enrolled tribe members for their own consumption were exempt from New York State cigarette tax pursuant to the limits of state power and the express exception in § 471 that no tax is imposed "on cigarettes sold under such circumstances that this state is without power to impose such tax." See City of New York v. Golden Feather Smoke Shop, Inc., 2009 WL 705815, at *1 (E.D.N.Y. March 16, 2009) ("Golden Feather I"); City of New York v. Milhelm Attea & Bros., Inc., 550 F. Supp. 2d 332, 346–49 (E.D.N.Y. 2008). However, with regards to cigarettes sold from the reservation to non-tribe members of the public, the Court held that § 471 constituted an "applicable" tax for the purposes of the CCTA and could serve as the basis for claims under both the CCTA and the CMSA. See City of New York v. Golden Feather Smoke Shop, Inc., 2009 WL 2612345, at *26-37 (E.D.N.Y. August 25, 2009) ("Golden Feather II"); Golden Feather I, 2009 WL 705815, at *1, 11; Milhelm Attea & Bros., Inc., 550 F. Supp. 2d at 346–49.

On August 25, 2009, this Court entered a preliminary injunction against all the defendants in this case, which enjoined them from selling unstamped cigarettes other than to members of the Unkechauge Nation for their personal use. See Golden Feather II, 2009 WL 2612345, at *43. Following several legal developments in state and federal court, and passage of the Tax Law Amendments (see footnote 1), the Court denied motions to vacate or modify this injunction on August 16, 2011. (Docket entry #353.) For purposes of this motion, the Court will largely assume the parties' familiarity with the details of this long procedural history.

Defendant Tony Phillips was served in this action on October 14, 2008 but has never answered or otherwise appeared. (See docket entry #34.) Accordingly, the City moved for a default judgment against him. On December 16, 2008, the Clerk of Court made an entry of default against Phillips. (Docket entry #56.) Under Rule 55(b)(2) of the Federal Rules of Civil Procedure, because Phillips never appeared in this action, the City was not required at that time to serve him with its motion for a default judgment. However, in light of a July 2011 amendment to Local Civil Rule 55.2, which requires the mailing of a motion for default judgment to the last known residence of a non-appearing defendant, and in an abundance of caution, the City mailed its motion papers to Phillips' last known address on October 5, 2011. (See docket entry #365.)

The complaint alleges that Phillips operates the Smoking Arrow Smoke Shop, and that he, like the other defendants, is or was engaged in the practice of purchasing large quantities of unstamped cigarettes and selling them off the reservation to members of the broader public, including in New York City. (Compl. ¶¶ 20, 38-50.) The complaint states that "each defendant has shipped, transported, received, possessed, sold, distributed or purchased in excess of 10,000 cigarettes that do not bear that State cigarette tax stamps required by [§ 471]." (Compl. ¶ 52.)

4

Further, the complaint asserts that "each of the defendants has repeatedly advertised, offered to sell and/or sold cigarettes for less that the 'basic cost of cigarettes' within the meaning of [the CMSA]." (Compl. ¶ 61.)

At the hearing on the motion for a preliminary injunction, the City presented evidence that Phillips worked at Smoking Arrow as a cashier, and participated in ordering inventory and paying bills. Golden Feather II, 2009 WL 2612345, at *16. The City's confidential witness testified that she purchased large quantities of unstamped cigarettes from Smoking Arrow for re-sale in New York City during 2007 and 2008. Id. at *16-18. She also testified that she dealt with Phillips and understood him to be effectively the owner of Smoking Arrow. Id. at *17.

In its Order imposing the preliminary injunction, the Court found that "each defendant has received, possessed, sold, distributed, and purchased quantities far in excess of 10,000 cigarettes, which do not bear New York tax stamps, under circumstances where such stamps are required." Id. at *34. The Court also found that "each defendant has sold, and continues to sell, large quantities of cigarettes at less than the cost of the retail dealer, as that term is defined by the CMSA." Id. at *37. The Court noted that although Phillips and a co-defendant were in default, "ample evidence introduced at the hearing establishes that these defendants have participated in the violations set forth herein. . . . Accordingly, both defaulting defendants are bound by the injunction." Id. at *43 n.10.

## II.   LEGAL STANDARD FOR DEFAULT JUDGMENTS

"[I]n civil cases, where a party fails to respond, after notice the court is ordinarily justified in entering a judgment against the defaulting party." Bermudez v. Reid, 733 F.2d 18, 21 (2d Cir. 1984). A defendant's default is an admission of all well-pleaded allegations in the complaint except those relating to damages. See Greyhound Exhibitgroup, Inc. v. E.L. U.L.

Realty Corp., 973 F.2d 155, 158 (2d Cir.1992) ("While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages."); Montcalm Pub. Corp. v. Ryan, 807 F. Supp. 975, 977 (S.D.N.Y. 1992). A district court must nevertheless determine whether the allegations state a claim upon which relief may be granted. See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir.1981) ("[A district court] need not agree that the alleged facts constitute a valid cause of action."). A default judgment entered on the well-pleaded allegations in a complaint establishes a defendant's liability. See Bambu Sales, Inc. v. Ozak Trading Inc., 58 F.3d 849, 854 (2d Cir.1995); SEC v. Mgmt. Dynamics, Inc., 515 F.2d 801, 814 (2d Cir.1975). Damages must then "be established by the plaintiff in an evidentiary proceeding in which the defendant has the opportunity to contest the amount." Greyhound Exhibitgroup, 973 F.2d at 158. "A court may determine the appropriate damages on the basis of affidavits and other documentary evidence, 'as long as [the court has] ensured that there [is] a basis for the damages specified in the default judgment.'" O'Connell v. Arborio Road Const. Co., 2010 WL 1729333, at *1 (N.D.N.Y. 2010) (quoting Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir.1997)).

### III. DISCUSSION

The City's complaint alleges three causes of action: (1) violation of the CCTA; (2) aiding and abetting violations of the CCTA; and (3) violation of the CMSA. For the reasons stated below, the motion for a default judgment is granted as to Phillips' direct liability under the CCTA and the CMSA. The motion is denied as to the aiding and abetting claim.

#### A. Violation of the CCTA

The CCTA makes it "unlawful for any person knowingly to ship, transport, receive, possess, sell, distribute or purchase contraband cigarettes." 18 U.S.C. § 2342(a). Contraband cigarettes are defined as "a quantity in excess of 10,000 cigarettes, which bear no evidence of the payment of applicable State or local cigarette taxes in the State or locality where such cigarettes are found, if the State or local government requires a stamp, impression, or other indication to be placed on packages or other containers of cigarettes to evidence payment of cigarette taxes." Id. § 2341(2). Together, these provisions establish four elements for a CCTA violation: that a party (1) knowingly "ship, transport, receive, possess, sell, distribute or purchase" (2) more than 10,000 cigarettes (3) that do not bear tax stamps, (4) under circumstances where state or local cigarette tax law requires the cigarettes to bear such stamps. See Golden Feather I, 2009 WL 705815, at *11; Milhelm Attea, 550 F.Supp.2d at 345–46.

This Court has already held that state law "require[d]" cigarettes sold by defendants to non-tribe members to bear tax stamps by virtue of the former version of New York Tax Law § 471. See Golden Feather I, 2009 WL 705815, at *11. The Court also held that § 471 constituted an "applicable" tax for the purposes of the CCTA and could serve as the basis for claims under the CCTA. See Golden Feather II, 2009 WL 2612345, at *26-34; Golden Feather I, 2009 WL 705815, at *1; Milhelm Attea, 550 F. Supp. 2d at 346–49.

The complaint alleges that the defendants, including Phillips, have participated in transactions involving the sale of over 10,000 unstamped cigarettes to non-tribe members of the public who trafficked the unstamped cigarettes into the City. (Compl. ¶ 3, 48, 52.) The complaint asserts that virtually all of the unstamped cigarettes purchased by the defendants from wholesalers are re-sold in "off-reservation" transactions. (Compl. ¶ 41.) The complaint states that "the defendants are well aware of [their] illegal trade" because the amount of cigarettes

purchased and resold could not possibly have been used for personal use by tribe members, and "because defendants actively participate in structuring and concealing illegal bulk sales, assisting in the packing of vans destined for New York City and even making their own bulk deliveries off the reservation." (Compl. ¶ 3.)

These allegations against Phillips were substantiated at the hearing on the preliminary injunction, where the Court found that Smoking Arrow had a history of selling large quantities of unstamped cigarettes to non-tribe individuals and was likely to continue that business into the future. Golden Feather II, 2009 WL 2612345, at *17-19. The City also presented evidence that Smoking Arrow employees assisted the City's confidential witness in concealing her on-reservation bulk purchases from the police, and on several occasions delivered unstamped cigarettes into New York City. Id.

Accordingly, the Court finds that the City's allegations, which are now deemed to be accepted as true, establish that Phillips is liable under the CCTA for knowingly shipping, transporting, receiving, possessing, selling, distributing or purchasing contraband cigarettes.

**B. Aiding and Abetting Violations of the CCTA**

The second cause of action in the complaint asserts aiding and abetting liability under the CCTA. This Court has already held in another case "that the CCTA does not provide for civil aiding and abetting liability." City of New York v. Milhelm Attea & Bros., Inc., 2009 WL 701005, at *2 (E.D.N.Y. March 11, 2009). The City no longer appears to be pursuing an aiding and abetting theory of liability in this case. Accordingly, the Court finds that the second cause of action fails to state a claim against Phillips and may not serve as a basis for a default judgment.

### C. Violation of the CMSA

The CMSA, N.Y. Tax L. §§ 483-89, "prohibits the sale of cigarettes below cost when the seller intends thereby to harm competition or evade taxes." Lorillard Tobacco Co. v. Roth, 99 N.Y.2d 316, 318 (2003). The statute makes it unlawful for

> any agent, wholesale dealer or retail dealer, with intent to injure competitors or destroy or substantially lessen competition, or with intent to avoid the collection or paying over of such taxes as may be required by law, to advertise, offer to sell, or sell cigarettes at less than the cost of such agent wholesale dealer or retail dealer, as the case may be.

N.Y. Tax L. § 484(a)(1). For retail dealers, it is also unlawful "to induce or attempt to induce, or to procure or attempt to procure the purchase of cigarettes at a price less than the cost of the agent for sales to retail dealers, if purchased from an agent, or at a price less than the cost of the wholesale dealer." Id. § 484(a)(4)(A).

The statute defines the "cost of the retail dealer," which is the minimum price at which a retail dealer may sell cigarettes to a customer, as "the basic cost of cigarettes plus the cost of doing business by the retail dealer," including operational costs and taxes. Id. § 483(b)(3)(A). The "basic cost of cigarettes," in turn, is defined as "the invoice cost of cigarettes to the agent who purchases from the manufacturer . . . less all trade discounts, except discounts for cash, to which shall be added the full face value of any stamps which may be required by law." Id. § 483(a)(1). The CMSA further provides that advertising, offering to sell, or selling cigarettes at less than cost "shall be prima facie evidence . . . of intent to avoid the collection or paying over of such taxes as may be required by law." Id. § 484(a)(6).

This Court has already held that the defendants here qualify as "retail dealers" subject to the CMSA. Golden Feather I, 2009 WL 705815, at *13-14. Additionally, as discussed previously, the Court has held that the former version of N.Y. Tax Law § 471 required that tax

9

stamps be affixed to cigarettes sold by reservation retailers to non-tribe members of the public. Thus, the "basic costs of cigarettes" and the "cost of such agent," for the purposes of § 483, includes the costs of the tax stamps required by § 471. See Golden Feather II, 2009 WL 2612345, at *35-37; Milhelm Attea & Bros., Inc., 550 F. Supp. 2d at 349. Finally, the Court has held that the City has standing to bring a CMSA claim against these defendants. Golden Feather II, 2009 WL 2612345, at *36-37.

The complaint alleges that in the course of making bulk, off-reservation sales of unstamped cigarettes, Phillips "has repeatedly advertised, offered to sell and/or sold cigarettes for less that the 'basic cost of cigarettes' within the meaning of § 483 of the CMSA by not including, as part of the price of the cigarettes, the full face value of the cigarette tax stamps required by New York law." (Compl. ¶ 61.) This allegation was substantiated by the evidence presented at the injunction hearing, where the Court found that Smoking Arrow "sold and continues to sell Newports at prices substantially below the CMSA minimums." See Golden Feather II, 2009 WL 2612345, at *19, 37. Under the CMSA, the Court may consider these actions as "prima facie evidence . . . of intent to avoid the collection or paying over of such taxes as may be required by law." N.Y. Tax L. § 484(a)(6).

Accordingly, the Court finds that the City's allegations establish Phillips' liability under the CMSA.

## IV. CONCLUSION

For the reasons stated above, the Court grants the City's motion for a default judgment as to Tony Phillips' direct liability under the CCTA and the CMSA. The Court denies the motion as to the claim of aiding and abetting under the CCTA. The City should submit its damages briefing together with its motion for summary judgment against the remaining defendants in this case.

SO ORDERED.

Dated: Brooklyn, New York
December 30, 2011

                                                              /s/
                                        Carol Bagley Amon
                                        Chief United States District Judge